# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JACKIE HILDEBRAND,  :

        Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.  :

Case No. 3:08-cv-192

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict

(now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial

resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on May 25, 2004, alleging disability from March 24, 2004, due to a hand impairment, back impairment, and high blood pressure. (Tr. 57-59; 225-25; 60). Plaintiff's applications were denied initially and on reconsideration. (Tr. 43, 48; 227, 234). A hearing was held before Administrative law Judge Melvin Padilla, (Tr. 238-62), who determined that Plaintiff is not disabled. (Tr. 8-19). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she has severe lumbar degenerative disc disease, depression, and estimated borderline intellectual functioning, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 14-15, ¶¶ 3-4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform medium work. (Tr. 15-18, ¶ 5). Judge Padilla then found that Plaintiff is capable of performing her past relevant work as a motel maid. (Tr. 18-19, ¶ 6). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 19, ¶ 7).

An MRI of Plaintiff's lumbar spine performed December 24, 2003, revealed bone marrow edema involving the L3 and L5 vertebral bodies which may represent bone contusion, diffuse lumbar spondylosis, multifactorial foraminal narrowing at L2-3 and L3-4, and multifactorial spinal canal stenosis and foraminal stenosis at L4-5. (Tr. 115).

Plaintiff received chiropractic treatment during the period May 12 to June 18, 2004. (Tr. 125-28). On July 13, 2004, Plaintiff's treating chiropractor noted that Plaintiff was treated for symptoms related to a motor vehicle accident of April, 2004, that she had improved, and that she had a history of chronic low back pain. *Id.*

Examining physician Dr. Danopulos reported on August 12, 2004, that Plaintiff complained of low back pain, hypertension, right hand pain, left ankle pain, and migraine headaches, that she moved in the exam room freely, her upper and lower extremities had full ranges of motion, her right hand and wrist were normal, and that her left ankle was painless during palpation and motion, but that it was painful while toe walking. (Tr. 129-38). Dr. Danopulos also reported that Plaintiff had a normal gait, her spine was painless to pressure, paravertebral muscles were soft and painless to palpation and pressure, straight leg raising was normal, squatting and arising from a squat were normal, and that her lumbosacral spine motions were normal but painful. *Id.* Dr. Danopulos noted that there was no evidence of nerve root compression or peripheral neuropathy, sensory exam and reflexes were normal, a lumbar spine x-ray revealed dextroscoliosis and multilevel spur formations, and that the objective findings were lumbar spine early arthritis, poorly controlled hypertension, right hand neuralgias, left ankle arthralgias, and non-specific headaches. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform work-related activities was affected by her very poorly controlled hypertension. *Id.*

Examining psychologist Dr. Flexman reported on November 16, 2004, that Plaintiff's facial expressions and general body movements were within normal limits, that she was alert and oriented, her immediate attention span was poor, her concentration was fair, and her intellectual functioning was judged to be below average. (Tr. 139-42). Dr. Flexman also reported that Plaintiff's response style was suboptimal, her effort during the mental status exam was poor, her reliability was judged to be poor and suggested moderate malingering or distortion, her effort during memory testing was good, and her judgment was fair. *Id.* Dr. Flexman noted that Plaintiff's obsessive thinking concerning somatic or other psychological problems was judged to be out of

proportion with reality and somatization was present. *Id.* Dr. Flexman also noted that Plaintiff's diagnoses were undifferentiated somatoform disorder, depression NOS, and borderline intellectual functioning; he assigned her a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff's ability to understand, remember, and carry out short, simple instructions was slight, her ability to attend was slightly impaired, her ability to interact with others was moderately impaired, and that her ability to respond appropriately to work pressures in a normal work setting was moderately impaired. *Id.*

Dr. Bennett has been Plaintiff's treating physician since at least May, 2002. (Tr. 161-214). On June 16, 2004, Dr. Bennett reported that Plaintiff's diagnoses were lumbar strain/sprain, chronic back pain, anxiety, essential hypertension, osteoarthritis, and asthma, that her condition was poor but stable, that she was able to lift/carry up to 5 pounds occasionally, that her abilities to sit and stand/walk were affected by her impairments and that she was employable. (Tr. 170-71). Dr. Bennett also essentially reported that Plaintiff's physical examination was normal. *Id.* In another reported also dated June 16, 2004, Dr. Bennett identified Plaintiff's diagnoses as hypertension, degenerative joint disease of the back, low back pain (bulging disc), asthma, osteoarthritis, anxiety, and lesion on the left lateral neck. There, she opined that Plaintiff was unemployable and that she would be unemployable for between nine and eleven months. (Tr. 167-68). Dr. Bennett again essentially reported that Plaintiff's physical examination was normal. *Id.* Dr. Bennett reported on February 3, 2005, and again on March 31, 2005, that Plaintiff was unemployable and would be for a period of nine to eleven months and that her physical examination was normal. (Tr. 165-66; 163-64). On December 21, 2005, Dr. Bennett reported that Plaintiff was unemployable and would be for a period of between thirty days and nine months. (Tr. 161-62). Dr. Bennett again reported that Plaintiff's examination was normal. *Id.*

6

Dr. Bennett reported on June 12, 2007, that Plaintiff was able to lift/carry less than five pounds, stand/walk and sit each for two to three hours during an eight-hour day and for one hour without interruption, and that her limitations were due to dizziness, pain, decreased range of motion, decreased mobility, and fatigue. (Tr. 215-19). Dr. Bennett also reported that Plaintiff was not capable of performing sedentary, light, or medium work. *Id.*

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to give the proper evidentiary weight to Dr. Bennett's opinion. (Doc. 6).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

7

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Bennett's opinion, Judge Padilla essentially noted that it was not supported by objective evidence and was inconsistent with other evidence in the record. (Tr. 17-18). This Court concludes that the Commissioner had an adequate basis for rejecting Dr. Bennett's opinion.

As noted above, in the various reports that Dr. Bennett provided during the period June, 2004, to December, 2005, Dr. Bennett indicated that Plaintiff's physical examination was normal. In addition, although Dr. Bennett determined that Plaintiff was unemployable, she reported that she would be unemployable for up to eleven month, a period which, of course, does not satisfy the durational requirements of the Act.

In addition, while Dr. Bennett essentially reported in June, 2007, that Plaintiff's residual functional capacity was inconsistent with an ability to perform substantial gainful activity, she based that opinion primarily on Plaintiff's subjective complaints such as increased pain, fatigue,

dizziness, and decreased mobility. Although Dr. Bennett did point to a decreased range of motion, she failed to describe that decrease with specificity or describe where that decrease existed. Further, a review of Dr. Bennett's clinical notes reveals that they contain few, if any, objective clinical findings. Dr. Bennett's opinion is also inconsistent with Dr. Danopulos' findings as well as with the reviewing physician's opinion. *See,* Tr. 226. Specifically, the reviewing physician determined that Plaintiff did not have a severe impairment. Dr. Danopulos reported that with the exception of Plaintiff's left ankle being painful while toe walking and a painful lumbosacral spine, Dr. Danopulos reported normal findings and concluded that Plaintiff was limited in her ability to perform work-related activities only by her poorly controlled hypertension.

Finally, Dr. Bennett's opinion is inconsistent with Plaintiff's self-reported activities. For example, Plaintiff reported that she drives, prepares food throughout the day, does the dishes, laundry, dusting, cleaning, and mopping, shops, plays cards, eats out, watches VCR movies, works puzzles, visits others, babysits for her grandchildren, eats out, and goes to the movies. *See,* Tr. 140.

Under these facts, the Commissioner did not err by rejecting Dr. Bennett's opinion that Plaintiff is disabled and instead relying on Dr. Danopulos' and the reviewing physician's opinions.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v.*

*Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939).  The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

March 9, 2009.

> *s/ Michael R. Merz*
> United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (c), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).